## No. 5331.

### E. MARQUEZE & Co. vs. S. FERNANDEZ & Co.

Where a draft is drawn in favor of the payee on a certain fund to arise from the sale of property then in the drawee's hands, and the payment of the draft, by its own terms, is postponed to the payment, (out of the same fund), of a debt due the drawee, the drawee, who has not accepted the draft, is only liable for whatever balance of the fund may remain, after the payment of his own debt.

The drawee is not estopped from disproving erroneous statements made by him to the holder of a draft as to the amount of the drawer's funds in his hands, or as to the extent of his claim on those funds, when his statements have not induced the holder to alter his position to his prejudice.

APPEAL from the Fourth District Court, parish of Orleans. *Lynch, J.*

*Lacey & Butler* for plaintiffs and appellants.

*A. & W. Voorhies* and *Geo. L. Bright* for defendants and appellees.

The opinion of the court on the original hearing was delivered by MARR, J., and on the rehearing by EGAN, J

MARR, J. This is a suit against the drawees of a draft of which the following is a copy:

"$582 06            New Orleans, October 21, 1873.

"Yourselves being paid, out of proceeds of my rice, pay to the order of E. Marqueze & Co. five hundred and eighty-two dollars and six cents, value received, and charge the same to account of

"C. ESCANDE.

" To S. Fernandez & Co., New Orleans."

The petition charges, substantially, that C. Escande, a resident of the parish of Plaquemines, and others, for his use and benefit, had shipped sundry lots of rice to Fernandez & Co., and that Escande, being indebted to Marqueze & Co. in a large amount, gave them this draft on account. That when the draft was given defendants agreed to pay it out of the proceeds of the rice in their hands, they, however, first to pay themselves the sum of about $1200.

That, subsequently, on sundry occasions, defendants informed petitioners that they had sold the rice, and that the proceeds were sufficient to pay the $1200 and the draft held by petitioners; and they promised, repeatedly, to pay it. Notwithstanding their agreement and promises, defendants failed to pay any portion of the draft.

The defendants pleaded a general denial; and the court below rendered judgment in their favor, from which plaintiffs appealed.

Bonnecaze, of Marqueze & Co., testifies that when Escande came to their store he demanded a settlement. Escande said he had no money, but that he had some rice in the hands of Fernandez & Co., and some drafts drawn by planters against rice which was unsold. He gave the draft, and said Fernandez & Co. would pay it when the rice was sold. Bonnecaze said, you have given such drafts to other parties, and I will go with you and see if Fernandez & Co. will pay this draft. "Mr. Fernandez said, I will pay you first, and so as not to forget it I will put it down in my check book." He took a pencil and put it down in his check book. "I asked him if he thought he would have enough to pay this draft, and he said there would be plenty."

Bonnecaze also states that he would not have taken the draft but for this assurance. He sent his book-keeper to see if the rice had been sold. "I sent a dozen times, and he always said the rice was not sold. In the meantime, I could not collect the balance of my claim against Escande, because I was waiting for a settlement of this draft."

He says the debt to be paid to Fernandez & Co. first was about $1200, and "that was distinctly understood," from Escande and Fernandez & Co.

After this he met Fernandez at the Union Insurance Company. This was about three months after the date of the draft, and a very short time before the suit was brought. "We had a talk about this draft. He told me the rice was sold, but the account sales was not made. I asked him if he had enough to cover us. He said yes. Then I left.

"He always answered me that the account sales was not ready. One day I went there and asked Mr. Fernandez for payment, because it was preventing me to collect the balance of the money. He says, come in the afternoon. I returned in the afternoon, and Mr. Fernandez says, there is nothing left to pay your draft."

Marqueze & Co. vs. Fernandez & Co.

Bellocq, book-keeper of Marqueze & Co., testifies that, after Bonne-caze returned from the first interview with Fernandez, he sent him to see Fernandez, *and make it sure.* " Mr. Fernandez told me that he had some rice on hand for Mr. Escande, but it could not be sold ; but there was plenty to protect our draft, and no other draft would be paid before this one. He always said there would be plenty to pay this draft after he was paid."

This witness saw Fernandez several times after the rice was sold; and Fernandez always gave the same answer, that there had not been time to make out the account sales. He said the draft would be paid as soon as the account sales were made out.

J. J. Fernandez, one of the defendants, when asked if he had ever told Bonnecaze or Bellocq that he had money in hand belonging to Escande, and that he would pay this draft, says :

"I could not have said so, because the account sales were not made up. It was impossible for me to say so, because Mr. Barrois attends to that department. It was impossible for me to say there was money, because Mr. Barrois is the one that attends to that."

He says he did not tell any one how much Escande owed his firm, and he could not without having the account sales in his hands. Before he saw Bonnecaze, Escande was indebted to Fernandez & Co. $3200 or $3300. "I knew we had so much rice, but I did not know what we would receive. No doubt if Mr. Escande had sent us all the rice we (would) have had enough; but he (sent) rice to others."

He does not remember what he said to Bellocq, but it was the same that he had told Bonnecaze. Escande requested him, if there was any thing left after paying Fernandez & Co. to give the preference to Marqueze & Co.; and that was the agreement. He exhibits the account showing balance against Escande, $369 19, and testifies that it is correct. The only other witness is Barrois, who proves nothing except that the account is correct; and that Escande was all the time since February, 1873, indebted to Fernandez & Co.

The account shows total credits $3255 13, of which four items are drafts of other persons indorsed to Fernandez & Co.—one credited nineteenth November, and three on the thirtieth November, 1873, aggre-gating $1627 40; three items under date thirty-first December, for rice received third, sixth, nineteenth September, aggregating $1376 01; and the other items, from thirty-first May to thirtieth June, inclusive, aggre-gate $251 72. On the debit side the entries beginning eleventh February, and end the fourteenth October; and they aggregate, including interest to twentieth January, 1874, $3624 32. It is not easy to see how Fernan-dez & Co. could have supposed, on the twenty-first October, the date of the draft in favor of Marqueze & Co., that there would be plenty of

money to pay their entire debt and this draft also; and it is equally difficult to understand how they could have made so great a mistake in so small an account. Instead of there being a surplus in their hands, there was a deficit, a balance due of $369 19; and if to this the amount of the draft, $582 06, be added, it will be seen that they were mistaken by $951 25 in the condition of an account footing $3624 32, every item of which had accrued, and must have appeared on their books, a week before the draft in question was drawn.

Besides, Fernandez & Co. must have been somewhat annoyed by the frequent calls of Bonnecaze and Bellocq, to inquire about this business; and there must have been some reference to the account in order to see how it stood. It is strange that the same answer was always made, that there would be plenty to pay the draft; and, after the rice had been sold, the same answer was made, and Marqueze & Co. were put off with the statement that Barrois had not had time to make up the account sales. It would have been the work of a short time only for a clerk to have made out the entire account; and it could have been no great affair to have made up the account sales of three lots of rice, two of sixty-one barrels and three sacks each, and one of forty-three barrels and three sacks.

The condition of this account and the testimony of Fernandez indicate that Fernandez & Co. expected to receive more rice from Escande than they had on the fourth October, and this expectation, probably, induced Fernandez to tell Bonnecaze, in the first interview, that there would be plenty to pay the draft. No doubt this statement caused Marqueze & Co. to take the draft; and that statement was confirmed by subsequent statements of Fernandez, during a period of three months, and in answer to direct inquiry. Marqueze & Co. considered the ultimate payment of the draft a certainty; and they had no reason to entertain any doubt on that subject.

Counsel for defendants refer to the act of 1858, now article 2278 of the R. C. C., which prohibits parol evidence of a promise to pay the debt of a third person. This is the same in substance as clause two, section four, of the English statute of frauds, which has been adopted in most if not in all of the States of the Union, which requires written proof of a promise to "answer for the debt, default, or miscarriage of another." It is well settled, in England and in the United States, that this statute does not apply to the promise of a debtor to pay the debt, or part of it, at the request of the creditor, to some other person or persons; nor to a promise to pay over to a third person, as directed, money remitted by or collected for the person so directing. In other words, this requirement of the statute is limited to collateral undertakings, as surety or guarantor, to pay a debt to which the promisor is otherwise a stranger;

and the liability of the drawee of a bill of exchange may be proven by his acts and declarations without writing or formal acceptance. Parsons on Contracts, vol. 3, pp. 24, 26.

The position of Fernandez & Co. is less favorable to them than it would have been if they had accepted this draft formally, without qualification, and in writing; because, in that case they would have been bound only according to its tenor and terms; and if nothing remained after paying the debt due themselves they would not have been liable on the draft. But they certainly did, by their conduct and statements cause Marqueze & Co. to receive and to rely upon this draft, and to regulate their conduct toward Escande, their debtor, accordingly. The legal effect is precisely the same as if Fernandez & Co., when Bonnecaze and Escande called upon them, had written on the face of the draft, "there will be funds in our hands sufficient to pay this draft, and we accept it payable when the rice is sold;" or if, after the rice was sold, they had said in writing: "We have funds in hand sufficient to pay this draft, and will pay it when the account sales is made up." The first statement induced Marqueze & Co. to receive the draft, with the full assurance that it would be paid when sales were made; and this was confirmed by frequent subsequent statements, which lulled these creditors into a false security, and prevented further efforts to collect that much at least of the debt originally due by Escande.

The draft is not ordinary commercial paper; but it is a mandate, qualified and conditional in its terms; and it was in the power of Fernandez & Co. to have made their liability wholly dependent on the contingency of the sufficiency of funds to pay it. They have dealt with it in such a manner as to incur all the liability of unqualified acceptors; and it is their own fault if the result is a loss to them of the whole amount.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be avoided and reversed; and that plaintiffs, appellants, do have and recover of defendants, appellees, S. Fernandez & Co., and Salvador Fernandez, and Joseph J. Fernandez, the individuals composing said firm, *in solido*, the sum of five hundred and eighty-two dollars and six cents, with interest at the rate of *five per cent per annum* from judicial demand, twenty-third January, 1874, until paid, three dollars and three cents costs of protest, and costs in both courts.

## ON REHEARING.

EGAN, J. A careful re-examination of this case satisfies us that our former decree was erroneous, and that of the district court rejecting the

demand of plaintiffs correct. We think that, giving to the evidence upon the subject of the promise to pay the draft sued on the largest limit, it amounts to nothing more than a promise to pay according to the terms and tenor of the draft itself; which were, "yourselves being paid (which means being first paid) out of the proceeds of my rice, pay to the order of E. Marqueze & Co. five hundred and eighty-two dollars· and six cents." Thus, by its own terms, the draft affected the plaintiffs with notice, which they also had otherwise, that the drawer was indebted to the defendants, who were his commission merchants, and who had a privilege upon the proceeds of the rice, and that this indebtedness must be paid before any thing would remain for the payment of the draft sued on. No written acceptance appears upon the draft, although the evidence of the plaintiffs themselves shows that it was presented the day it was taken. It was given on account of an antecedent debt at the instance of plaintiffs themselves, and before the defendants had been seen or conferred with on the subject. The only hesitancy in taking the·draft seems to have been, not on account of its being payable after the debt of the defendants, but because the drawer had given two other drafts against the same fund in favor of other persons, and, therefore, one of the plaintiffs and the drawer, Escande, went together to the defendants for the purpose of·arranging with them to pay this draft in, preference to the other drafts given by Escande, and not in preference to the debt of Escande to the defendants. Although the defendants declined to accept the draft, even according to its tenor, in which the plaintiffs acquiesced, and still retained the draft to take their chances of its payment, the defendants took a memorandum of the request of Escande that this draft should be preferred to the others given against the same fund. This is all, even according to the plaintiff's own evidence as to what transpired at that time. To that is referable, and by that should be interpreted, all the other subsequent evidence and conversations had between the parties, or their agents, in relation to the draft. So that it is manifest that the plaintiffs took and retained the draft knowing that its payment could be expected, and was to be made, only *out of the proceeds of rice* of the drawer in the hands of the drawee for sale, and, also, only after a known and existing debt of the drawer to the drawee *should be first paid.* There is no evidence that there was any surplus, that the rice brought more than the amount due to the defendants by Escande at *the time the draft was given.* On the contrary, it is distinctly shown by a well supported and detailed account in the record that the entire proceeds were absorbed and a large balance still due to the defendants on their own debt. All the other evidence relates to alleged subsequent conversations with one of the defendants, *not in relation to any acceptance* of the draft, but when the plaintiffs

Marqueze & Co. vs. Fernandez & Co.

sought *information* as to the *probabilities* and *time* of payment. Even accepting as true every statement made by the plaintiffs' witnesses, the admissions of the defendants, both as to the amount of their own debt and the sufficiency of the proceeds of the rice to pay plaintiffs' draft, are clearly shown to have been incorrect and made in error of fact (if made at all), and as they in no manner altered the situation of the plaintiffs, or put them "*in duriori casu*," the defendants are not estopped from showing the error, and are not bound by the admissions, even if made. Upon this, subject, however, the plaintiff's evidence is loose and unsatisfactory, and is directly contradicted by that of the defendants, which we think, on the other hand, is consistent with all the other evidence in the case, and by the undisputed facts and the probabilities, and it was, besides, easy for the plaintiffs' witnesses to have been mistaken, and to have inferred more than was said or meant from language and conduct which we must interpret by the light of the known facts of the case. The alleged admissions as to both the amount of the defendants' own debt and the proceeds of the rice, if made at all were made without reference to the books or accounts of sale, and by one of the defendants who neither kept nor had charge of either, and who, in the nature of things, could not be expected to be familiar with them without an examination, while as we have seen those books and accounts themselves, and the evidence of the book-keeper and accountant of the defendants, within whose especial knowledge they were, negative the truth of any such admissions. One of them is detailed as a mere Canal street conversation, away from defendants' place of business and not in business hours, between one of plaintiffs and one of the defendants alone, and the others are hesitatingly and unsatisfactorily put forth by the clerk of plaintiffs as conversations between himself and one of the defendants alone, while all are flatly and emphatically denied by the other party to the conversations. We think these come properly within the class of "loose conversations" had under circumstances when it would be impossible to convict the witness of perjury, and which, assuming that the witnesses were of equal credibility (and that the defendants are not supported by other known or admitted facts, as we think they are), would still leave the plaintiffs' case in so much doubt that they can not recover, and such was the opinion of the judge below who heard and knew the witnesses.

It is therefore ordered and adjudged that our decree heretofore rendered be avoided and set aside, and the judgment appealed from be and it is affirmed with costs of both courts.