(91 South. 405)

No. 25059.

### NIGHT & DAY BANK OF ST. LOUIS v. FIRST NAT. BANK OF SHREVEPORT.

(March 27, 1922.)

*(Syllabus by Editorial Staff.)*

**Banks and banking ⚡140(3)—Statement of defendant bank that it had funds to pay check held not to make it liable thereon.**

A statement by defendant bank in two telegrams, one to a payee of a check and another to plaintiff which cashed the check, that it had "funds to pay the check of H. for $220," sent in the code of the American Bankers' Association, of which defendant and plaintiff were both members, and which was used only to advise of the existing condition of a depositor's account, was not an acceptance of the check or a promise to pay it.

Certiorari to Court of Appeal, Second Circuit.

Action by the Night & Day Bank of St. Louis against the First National Bank of Shreveport. From a judgment dismissing the action, plaintiff appealed to the Court of Appeal, Second Circuit, which maintained the suit. Defendant applies for a writ of certiorari to review the decree of the Court of Appeal. Judgment of Court of Appeal set aside, and judgment of district court, dismissing the action, reinstated.

Blanchard, Goldstein & Walker, of Shreveport, for applicant.

Earl L. Wiener, of Shreveport, for respondent.

By the WHOLE COURT.

PROVOSTY, C. J. The plaintiff, a bank of St. Louis, Mo., sues the defendant, a bank of Shreveport, La., upon a check payment of

which was refused for want of funds to the credit of the drawer. The question is whether two certain telegrams sent by the defendant bank on the faith of which the check was cashed by plaintiff, amounted to an acceptance of the check or a promise to pay it on presentation. The check was to the order of W. J. Burroughs, who sent the following telegram to defendant:

"Is check of E. O. Shad Harper for $220 good."

Defendant's telegram in answer was:

"We have funds to pay check E. O. Shad Harper for $220."

The check and these telegrams being presented to the plaintiff bank, it sent to the defendant the following telegram:

"Confirm your wire of to-day to W. J. Burroughs that you will honor $220 check E. O. Shad Harper."

Defendant telegraphed back:

"This confirms our telegram to W. J. Burroughs that we have funds to pay draft E. O. Shad Harper for $220."

These telegrams of defendant simply imparted the information that the balance of the drawer was sufficient to meet the check, and did not import an acceptance of the check or a promise to pay it. They seem to have been carefully worded for guarding against acceptance or promise to pay. In fact, the person who sent them testified that he took this wording from the code of the American Bankers' Association, where for saying exactly what was said in these telegrams the word "lounging" is to be used, and for accepting or promising to pay a check the word "lovebird" is to be used.

The law as to whether a wording such as that of these telegrams imports acceptance or promise to pay is stated in a note in 8 L. R. A. (N. S.) 1148, as follows:

"It seems to be a well-settled rule of law that the drawee of a check will not be liable to the holder thereof upon a claimed contract of acceptance external to the check, where the alleged agreement upon the part of the drawee is based upon its statement that the check is 'good,' or 'all right,' or words of like import."

The complaint of plaintiff is that it was misled to its prejudice by these telegrams. If so, plaintiff has but itself to blame for not having known better the import of language. Moreover, plaintiff at the time it cashed this check was a member of the American Bankers' Association and should have known that the said telegrams used the formula of that association for simply advising of the present condition of a depositor's balance.

What comfort the plaintiff can derive from the cases of Robbins v. Lambeth, 2 Rob. 304, and Marqueze v. Fernandez, 30 La. Ann. 195, cited by its learned counsel, we are at a loss to discover. In the former the drawee of a draft, when the draft was presented for payment, said that he could not pay until he had seen the drawer, but that "there will be no difficulty about it"; and the court held that this did not amount to an acceptance, and that "words far less ambiguous, in ordinary circumstances, have been held not to bind as an acceptance"—citing Powell v. Jones, 1st Espinasse, p. 17 where "it was ruled that the words, 'there is your bill, it is all right,' did not amount to an acceptance." The Fernandez decision on the original hearing was founded upon a course of conduct of which the court said:

"The position of Fernandez & Co. is less favorable to them than it would have been if they had accepted this draft formally."

In other words the decision was founded, not upon a simple acceptance, but upon estoppel resulting from repeated statements by which the plaintiff was lulled into a false security. On the rehearing the decision was reversed, because, as stated in the syllabus of the case, "his statements have not induced the holder to alter his position to his prejudice."

Into the present case there enters no ele-

ment of estoppel; the transaction involves simply the handling of commercial paper by two banks; and the question presented is the bare one whether the words of the telegrams import an acceptance or promise to pay. The courts with practical unanimity have held that, in order that there should be an acceptance or promise to pay, the intention to that effect must be clearly expressed. In the present case the expression is clear the other way. Defendant was not required to make it more explicit by adding a warning that the check would not continue to be good if before its presentation the depositor drew out the funds on hand. That was a thing a banker in his teens would be expected to know, and which, moreover, would have been in the nature of a reflection upon the depositor by implying that he might play the trick of drawing out his funds before the check could in due course be presented for payment.

The judgment of the Court of Appeal, which maintained the suit, is set aside, and that of the district court, which dismissed it, is reinstated and made the judgment of this court. Defendant to pay all costs.